FIDELITY & DEPOSIT COMPANY OF MARYLAND *v.* SLUSS.

[No. 27,078.  Filed May 31, 1938.]

*Kane, Blaine & Hollowell, Jr.,* for appellant.
*Ellis E. Sluss,* for appellee.

ROLL, J.—On the 28th day of May, 1921, the Thermoid Rubber Company recovered a judgment in replevin against Ben Saperstine and Ellis E. Sluss in the Johnson Circuit Court. The plaintiff in that suit sought to replevin certain personal property, to wit: Automobile casings and tubes which it alleged the defendants unlawfully and wrongfully held possession. The judgment rendered was in the alternative to return the property or its value which was found to be $1,002.82. From this judgment the defendants, Ben Saperstine and Ellis E. Sluss, appealed. An appeal bond was given in the sum of $1,500.00, which was signed by Ellis E. Sluss as principal and the United States Fidelity & Guaranty Company of Baltimore, Maryland, as surety, which bond was duly approved.

Upon the filing of the said bond all proceedings for the collection of the said judgment were stayed and the appeal was prosecuted in the Appellate Court of Indiana. On January 10, 1923, the Appellate Court handed down its decision in said cause affirming the judgment of the Johnson Circuit Court. That thereafter an execution was issued by the clerk of the Johnson Circuit Court against Ellis E. Sluss for the collection of the said judgment, interest and cost, which execution was delivered to the sheriff of Marion County, but was returned unsatisfied. Thereafter the Thermoid Rubber Company filed in the Circuit Court of Marion County its action against Ellis E. Sluss and the United States Fidelity & Guaranty Company as defendants on the appeal bond, alleging in substance that the property, to wit: the automobile casings and tubes which were adjudged to be the property of the plaintiff by the Johnson Circuit Court had never been delivered to the plaintiff pursuant to its judgment and decree but had been retained by the defendant Sluss pending the appeal to the Appellate Court and that by reason of the delay in delivering said prop-

erty, the same had deteriorated in value and become valueless and by reason thereof, the plaintiff was entitled to recover judgment against Ellis E. Sluss, for the amount of said judgment, with interest and accrued cost, as principal, and the United States Fidelity & Guaranty Company as surety upon the appeal bond.

This cause of action was venued to the Boone Circuit Court where a trial was had, resulting in a judgment in favor of the Thermoid Rubber Company and against Ellis E. Sluss as principal, and the United States Fidelity & Guaranty Company as surety on said appeal bond in the sum of $1,290.89, plus cost. From this judgment the defendant Ellis E. Sluss prayed an appeal to the Appellate Court, which appeal was granted upon filing an appeal bond in the penal sum of $2,000.00. The United States Fidelity & Guaranty Company did not appeal and assigned no error. Ellis E. Sluss perfected the appeal and gave bond in the amount above stated with the Fidelity & Deposit Company of Maryland as surety on said appeal bond. Before the Fidelity & Deposit Company of Maryland executed and signed the appeal bond the defendant, John W. Sluss (appellee herein), entered into an indemnity agreement with the Fidelity & Deposit Company of Maryland. As to this indemnity agreement it was stipulated as follows:

"It is further agreed and stipulated that prior to the execution of said appeal bond by the plaintiff herein, to-wit: the Fidelity & Deposit Company of Maryland, a written application was duly made by the said Ellis E. Sluss to said Fidelity & Deposit Company of Maryland for said bond aforesaid, which application was in writing and is made a part of this agreement and marked Exhibit 'A.'

"And it is further agreed that as a part of said application and as a condition precedent to the execution of said appeal bond by the said Fidelity & Deposit Company of Maryland, plaintiff herein, it was agreed between the parties that a contract of indemnity should be executed by the defendant, John W.

· Sluss, wherein he agreed, in consideration of the said Fidelity & Deposit Company of Maryland, plaintiff herein, becoming surety on said appeal bond for the said Ellis E. Sluss, that he, the said John W. Sluss, would indemnify and save harmless this plaintiff from any loss or damage by reason of its suretyship on said appeal bond, which said contract of indemnity was duly executed by the defendant, John W. Sluss, on the 11th day of August, 1925, and prior to the execution of said appeal bond aforesaid, and is made a part of this Stipulation and marked Exhibit 'B'."

The appeal from the judgment of the Boone Circuit Court was thereafter perfected to the Appellate Court of Indiana, which court affirmed the judgment of the Boone Circuit Court. After the Appellate Court had affirmed the judgment of the Boone Circuit Court the United States Fidelity & Guaranty Company paid the Thermoid Rubber Company $1,875.59, being the amount of the principal, interest and cost on said judgment. After said payment was made by the United States Fidelity & Guaranty Company, said company made demand upon the Fidelity & Deposit Company of Maryland as surety on the separate appeal bond of said Ellis E. Sluss which was filed in the appeal from the judgment of the Boone Circuit Court for payment of said sum by way of reimbursement for the amount paid out and expended by the said United States Fidelity & Guaranty Company in satisfaction of said judgment rendered in the Boone Circuit Court.

On the 5th day of June, 1935, the Fidelity & Deposit Company of Maryland paid the United States Fidelity & Guaranty Company of Maryland said sum of $1,875.59, being the amount laid out and expended by the United States Fidelity & Guaranty Company in satisfaction of said judgment of the Boone Circuit Court and also an additional sum of $29.90, which it paid to Charles L. Sumner, sheriff of Marion County, as costs occasioned by

the appeal to the Appellate Court from the judgment of the Boone Circuit Court.

This action is brought by the Fidelity & Deposit Company of Maryland against John W. Sluss upon the indemnity agreement which the said John W. Sluss executed and delivered to the Fidelity & Deposit Company, before it signed the appeal bond in the appeal from the Boone Circuit Court, and which indemnity agreement was executed as a part consideration to the Fidelity & Deposit Company of Maryland for signing said appeal bond.

The facts were stipulated and were in substance as above set out. Upon the above facts the lower court concluded that the Fidelity & Deposit Company of Maryland was entitled to recover $29.90, plus interest being the amount of cost paid to the sheriff of Marion County and occasioned by the appeal prosecuted by Ellis E. Sluss from the judgment rendered in the Boone Circuit Court, but denied recovery for the amount of the judgment it paid to the United States. Fidelity & Guaranty Company to reimburse it for the amount of the judgment plus interest and cost rendered in the Boone Circuit Court.

The errors assigned are:

1. That the decision of the court is not sustained by sufficient evidence.

2. The decision of the court is contrary to law.

3. The court erred in assessing the amount of recovery in that the amount is too small.

As to the terms of the indemnity agreement, there is no controversy. It is impliedly conceded by appellee that if the Fidelity & Deposit Company of Maryland was under legal obligation to reimburse the United States Fidelity & Guaranty Company for the amount it paid in discharge of the Boone Circuit Court judgment, he would be liable to save appellant harmless by the terms of the indemnity agreement.

The appellee contends that at the time appellant Fi-

delity & Deposit Company of Maryland paid the sum of $1,875.59 to the United States Fidelity & Guaranty Company it did so as a volunteer and was not legally bound to make such payment, and therefore appellee is not liable to appellant on his indemnity agreement, and in support of this contention he says that in order to constitute subrogation, the payment must be made under coercion and unless payment was made under compulsion of law it was not subrogation. And cites in support, *Opp* v. *Ward* (1890), 125 Ind. 241, 24 N. E. 974; *State ex rel.* v. *Kaufman* (1917), 186 Ind. 602, 117 N. E. 643.

If we understand the record, the judgment rendered in the Boone Circuit Court was in favor of the Thermoid Rubber Company and against Ellis E. Sluss and the United States Fidelity & Guaranty Company. From this judgment Ellis E. Sluss appealed and the Fidelity & Deposit Company of Maryland became surety on the appeal bond. When this judgment was affirmed by the Appellate Court the Thermoid Rubber Company might have issued execution against the United States Fidelity & Guaranty Company. The United States Fidelity & Guaranty Company was one of the judgment defendants in the action of the Thermoid Rubber Company v. Ellis E. Sluss and United States Fidelity & Guaranty Company, and as a judgment debtor was responsible to the plaintiff for the amount of said judgment. The Thermoid Rubber Company might have had execution issued against Ellis E. Sluss, or it might have chosen to hold the Fidelity & Deposit Company of Maryland on its appeal bond. The United States Fidelity & Guaranty Company, recognizing its liability as a judgment defendant and to prevent the incurring of possible additional cost and interest occasioned by its refusal to pay, liquidated said judgment by paying it in full. It could not be said under such circumstances that the payment of this judgment by the United States Fidelity & Guaranty Company was a vol-

untary payment. The appellant herein, Fidelity & Deposit Company of Maryland, was liable also to the Thermoïd Rubber Company on the appeal bond as above stated.

The Fidelity & Deposit Company of Maryland never became surety for the United States Fidelity & Guaranty Company. When it signed the appeal bond of Ellis E. Sluss, it became bound according to the terms of said bond, which in part provided as follows:

> "That, We, Ellis E. Sluss, as Principal, and Fidelity & Deposit Company of Maryland, as Surety, are held and firmly bound unto The Thermoid Rubber Company in the penal sum of $2,000.00 to the payment of which well and truly to be made and done, we bind ourselves, our heirs, executors, administrators and assigns, jointly and severally, firmly by these presents.
>
> "Sealed with our seals and dated this 1st day of September, 1925.
>
> "The condition of the above obligation is such that whereas, heretofore, to-wit: on the 11th day of July, 1925, the said Plaintiff in Boone Circuit Court recovered a judgment against the said Ellis E. Sluss for the sum of $1,230.00 in damages and costs of suit, etc., from which said judgment of said Boone Circuit Court the said Ellis E. Sluss appeals to the Appellate Court of Indiana.
>
> "Now if the said Ellis E. Sluss shall well and truly prosecute said appeal and abide by and pay the judgment and costs which may be rendered or affirmed against him, then the above obligation to be void; otherwise to be and remain in full force and virtue."

It will thus be seen that by the above provision of the appeal bond the appellant became bound for the payment of said judgment, in the event said judgment was not paid by the principal, Ellis E. Sluss. Ellis E. Sluss did not pay the judgment. It was paid by the United States Fidelity & Guaranty Company as a judgment defendant,

and was later upon demand reimbursed by the appellant herein.

Brandt on Suretyship and Guaranty (3ed) Sec. 288, says:

"A surety who becomes bound for a debt during the course of legal proceedings against the principal for the collection of the same is not a co-surety with the original surety for the debt nor entitled to contribution from it, and if such original surety afterwards has to pay the debt he is entitled to subrogation to the creditors' rights against such subsequent surety and may collect the whole amount he has paid from such subsequent surety. Where a judgment was recovered against principal and surety and the principal alone appeals giving a different surety on the appeal bond and the judgment was affirmed and was paid by the surety in the appeal bond it was held that he could not recover contribution from the original surety."

Stearns' Law of Suretyship (4ed) §246, p. 433, says

"Where successive appeal bonds were given it was said in reference to the rights of the last bondsmen, 'But for their intervention the judgments may have been collected of the defendant therein. They secure the delay by agreeing to pay the judgment. The present defendants may have been injured, and justice would seem to demand, that between parties thus situated the primary liability should rest upon those who intervened to procure the delay. It is a general rule that sureties, upon payment, are entitled to be substituted to all the rights and remedies of the creditor as to any fund, lien or equity to which the latter may resort for payment, and in equity are entitled to the benefit of any judgment or instrument against the principal. This right of substitution does not depend upon contract but upon principles of equity arising out of the relation of principal and surety, and the obligation of the former to indemnify the latter against loss. Upon the affirmance of the judgments at the General Term, these defendants had a right to pay the same as sureties, and to be substituted to the rights of the plain-

tiff in the judgments and to enforce the same against the defendants therein.

" 'In that case, upon appeal to the Court of Appeals, the undertaking would necessarily inure to the benefit of the defendants as equitable owners of the judgments, and upon affirmance in the Court of Appeals they could enforce it against the second sureties. The latter agreed, upon the contingency of affirmance, to stand in the place of their principal, the defendant in the judgments, and to pay the judgments. In effect they became sureties to and not for these defendants, and, hence, would not have been entitled, upon payment, to substitution against them.' "

If the Fidelity & Deposit Company had paid the judgment of the Boone Circuit Court it could not recover from the United States Fidelity & Guaranty Company, which was surety on the first appeal bond; then it necessarily follows that the United States Fidelity & Guaranty Company having paid the judgment under the rule above stated would be entitled to recover from appellant herein. The Fidelity & Deposit Company was liable to pay the judgment by reason of having signed the appeal bond in the last appeal, and if the appellant herein was liable to reimburse the United States Fidelity & Guaranty Company which paid the judgment without suit such payment cannot be considered as a voluntary payment.

In the case of *Opp* v. *Ward* (1890), 125 Ind. 241, 24 N. E. 974, Wilson & Hanna leased certain premises to one Telford for a stipulated sum as rent. Ward, the appellee therein, became guarantor for the performance of the terms of the lease. Telford went into possession but refused to pay the agreed rent and refused to surrender possession of the premises at the end of his term. The lessors recovered judgment for possession and for $164.44, damages. Telford appealed to the Supreme Court, giving Opp as surety on the appeal bond. The judgment was affirmed. Thereupon Wilson & Hanna

brought suit and recovered judgment against Ward, on his contract of guaranty. The amount recovered was $676.00, besides cost, the amount specified being the rental value of the leased premises from the date of the judgment appealed from to the 16th day of July, 1880, on which date Telford died, having previously paid the judgment recovered against him for damages. The judgment against Ward was afterwards affirmed against him. Ward subsequently paid the judgment recovered against him and thereupon brought this action against Opp on the appeal bond. The trial court rendered judgment in favor of Ward. The court premised its decision on the proposition that Ward, upon paying the judgment recovered by Wilson & Hanna against him for the rent that accrued pending the appeal taken by Telford became subrogated to their rights and remedies upon the appeal bond.

It was insisted in the above case that in case of successive sureties, who became bound by separate obligations for the payment of the same debt, the equity of the last surety is superior to that of the first, and that as the liability of the plaintiff below, as guarantor, was prior in point of time to that of appellant as surety on the appeal bond, both being bound for the same debt, the equity of the latter was at least, equal, if not superior, to that of the former. This court said (pp. 243, 244, 245):

"This view is not maintainable in a case like the one under consideration. It is quite true the plaintiff below became liable, as guarantor, for the payment of all rent, as well as for all damages growing out of the unlawful detention of the property by the tenant. But it is also true that his liability, which theretofore was uncertain and contingent, became certain and fixed when the landlord recovered judgment for the possession of the leased premises, and for damages for their unlawful detention. The guarantor had the right to pay the amount of the judg-

ment recovered against his principal, and thus put an end to his liability at once. By the voluntary intervention of the appellant, in becoming surety on the appeal bond, all further proceedings on the judgment by which the landlord was awarded the right of immediate possession, were stayed, and the hands of the guarantor were effectually tied until the appeal was disposed of. It is settled that the sureties on an appeal bond given by a judgment defendant on appeal from a judgment for the possession of certain real estate are liable not only for the money judgment, but also for the rental value of the real estate pending the appeal, to an amount not exceeding the penalty of the bond. *Opp* v. *Ten Eyck*, 99 Ind. 345; *Hays* v. *Wilstach*, 101 Ind. 100; *Graeter* v. *DeWolf*, 112 Ind. 1, *Stults* v. *Zahn*, 117 Ind. 297.

"Upon the determination of the appeal, the landlord had his election to sue on the appeal bond and recover the rental value of the premises unlawfully detained, or to proceed against the guarantor on the lease. He adopted the latter alternative. If he had sued on the appeal bond and recovered judgment against the surety, it is quite certain that the latter would have had no standing in a court of equity to recover from the guarantor. This is so because he occupies the position of a volunteer, and, as is pertinently said in *Acer* v. *Hotchkiss, supra*: 'One who is only a volunteer can not invoke the aid of subrogation, for such a person can establish no equity.' *Gans* v. *Thieme*, 93 N. Y. 225. Having intervened as a volunteer, and by his interposition stayed proceedings on the judgment for possession to the prejudice of the guarantor, whose liability had become fixed and at an end, so far as respects future rents, it must be considered in equity that he did so upon the condition that he would take the place of the guarantor from that time forward. *Barnes* v. *Moot*, 64 N. Y. 397; *Hinckley* v. *Kreitz*, 58 N. Y. 583; Schnitzel's Appeal, 49 Pa. St. 23.

"The interposition of the second surety having been the means of involving the first in the liability which he was ultimately compelled to pay, the equity of the first is complete, and he is entitled, on the principles of subrogation, to stand as though the creditor had assigned the appeal bond to him. *Brandenburg* v. *Flynn*, 12 B. Mon. 397; *Bohannon* v. *Combs*, 12 B. Mon. 563; Brandt Suretyship and

Guaranty, section 227; Sheldon Subrogation, section 131.

"One who intervenes without the solicitation of a surety, and by his interference ties the hands of the latter so as to prolong or add to his liability, and prevent the effectual enforcement of the judgment or process against the principal, as it might have been but for his intervention, can not be made to say that he occupies a position which should commend him to the favor of a court of equity."

In *Fidelity & Deposit Company* v. *Bowen* (1904), 123 Iowa 356, 98 N. W. 897, the original action was by a Mrs. Bowen against Mrs. Nyere for the alienation of her husband's affections and the action was aided by a writ of attachment levied upon certain real estate owned by the defendant. To release the attachment the defendant gave a release bond with one Offenbacker and Gerber as sureties. Plaintiff recovered judgment and defendant appealed giving the Fidelity and Deposit Company as surety on her supersedeas bond. The judgment was affirmed and judgment was entered on the supersedeas bond in the Supreme Court. Upon execution being issued the Fidelity and Deposit Company paid the judgment and cost, and brings this action against Gerber on the bond given in the district court for the discharge of the attachment and recovered. Upon reversing the district court the Supreme Court of Iowa said (pp. 359, 360):

"The appeal was taken by Mrs. Nyere, and the supersedeas bond executed by her with the plaintiff as surety, without the knowledge or consent of Gerber as surety on the release bond. Undoubtedly a surety, upon the payment of his principal's debt, is ordinarily entitled to be subrogated to the rights of the creditor to all the securities held by him. But this right of necessity depends upon the superiority of his equities. Indeed, subrogation, which is defined as the 'substitution of another person in the place of the creditor to whose rights he succeeds in relation to the debt,' is, as was said in *Richards* v. *Cowles*, 105 Iowa, 738, 75 N. W. 649, 'an equitable

result purely, and depends on facts to develop its necessity that justice may be done.' This principle has been uniformly applied in determining the liabilities of sureties on successive bonds for the satisfaction of the same debt to each other. That the surety on one bond has paid the debt does not alone entitle him to step into the creditor's shoes and recover what he has expended from bondsmen on another obligation. To entitle him to do so, his equities must appear to be superior to those of the sureties on the other bond. If the execution of one bond has worked no detriment to the sureties on another, and all are alike obligated to pay precisely the same debt, there is no basis for subrogation of any of the creditor's rights against others. In such a case the most that can be said is that the equities are equal—a condition of things essential to contribution, but fatal to subrogation. In discussing the question, but not deciding it, the court, in *Pott* v. *Nathans,* 1 Watts & S. 155, (37 Am. Dec. 456) said: 'Where, however, such means consist of the responsibility of an individual becoming a later surety or guaranty for the same debt of the principal, there arises a conflict of equities which may give rise to new questions as to priority between the former and the latter surety. Such latter surety, stipulating at the instance of the principal to pay the debt, suffers no absolute injustice in being obliged to do so, since he is compelled to perform no more than he undertook, and has no right to complain that he is not allowed to use as a payment by himself the money which proceeds from another person whom his principal was previously bound to save harmless.' There the second bond operated to stay an execution levied against real estate, and this was held to be detrimental to the first surety, and therefore to entitle him to subrogation upon the payment of the judgment to the rights of the creditor in the stay bond. But for the interposition of the second surety the judgment might have been enforced against the real estate. The discharge of a levy, however, does not appear essential in order to preponderate the equities in favor of the first surety. It is enough, according to some authorities, if the effect of the second bond is to tie the hands of the

first surety and creditor, so as to interfere with or delay the collection of the debt."

In the case of *Burns* v. *Huntingdon Bank* (1830), 1 Penr. & W. (Pa.) 395, a surety on a note upon payment of the judgment rendered thereon was held entitled to be substituted to the right of the creditor to recover on a bond given to stay execution one year on the ground that they (the stay) interposed to procure a personal advantage to the principal and to the detriment of the surety, who might perhaps have been exonerated had the proceedings not been stayed against the principal.

In *Mitchell* v. *DeWitt* (1860), 25 Tex. Supp. 180, where the surety on a note who paid the judgment subsequently rendered was allowed to recover on the supersedeas bond, a writ of error having been sued out. The court said (p. 187):

> "The latter sureties upon the writ-of-error bond suffer no absolute injustice in being obliged to comply with their undertaking, and cannot complain that they are not allowed to use as a payment by themselves the money which has proceeded from the original surety, whom their principal was previously bound to save harmless. But for their interposition, the plaintiff may have been exonerated from his liability. The principal may then have had visible property subject to execution, of which, but for the interposition of defendants to supersede the judgment and prevent execution thereof, the plaintiff might have availed himself to have satisfaction of the judgment."

In *Hartwell* v. *Smith* (1864), 15 Ohio St. 200, it is said (p. 204):

> "In regard to this question of superiority of equities, which is liable to arise in the case of prior and subsequent bonds, executed by different sureties, for distinct purposes, and both constituting securities in the hands of the creditor for the same debt, it is well settled that if the interposition of the second surety is for the benefit of the principal alone, without the sanction or assent of the first surety, who

may be prejudiced thereby; as when the effect of the second bond is to prevent the enforcement of present payment from the principal, and thus to prolong the responsibility of the first surety; in such a case the equity of the first surety is superior, and he is entitled to be subrogated to the rights of the creditor as against the second."

The doctrine announced in the above cases seems sound and equitable. The benefits intended for the principal alone by the second surety should be conferred, if at all, at his own risk and not at the risk of the other parties, whose wishes were not consulted in any way whatsoever in the transaction.

The above rule finds support in the following cases: *Ex parte Harrison* (1845), 7 Ala. 736; *Chaffin* v. *Campbell* (1856), 36 Tenn. (4 Sneed) 184; *Schnitzel's Appeal,* 49 Pa. 23; *Winston* v. *Rives* (1883), 4 Stew. & P. (Ala.) 269; *Brown* v. *Glascock* (1842), 1 Rob. (Va.) 461; *Continental Trust Co.* v. *American Surety Co.* (1897), 80 Fed. 180, 25 C. C. A. 364, 53 U. S. App. 44.

Appellee relies upon the case of *Kane* v. *State ex rel.* (1881), 78 Ind. 103. That case was discussed and distinguished in the case of *Opp v. Ward, supra.* It may also be observed that the decision in the Kane case was controlled by the replevin bail statute, §2-3411 Burns' Ind. St. 1933. Whether the proper interpretation was placed upon the statute, and whether that decision is sound we need not decide, for it is clear that the law there laid down and adopted is not controlling in this case.

We conclude, therefore, that since appellant paid the judgment for which the Fidelity & Deposit Company had become liable on its second appeal bond and since the Fidelity & Deposit Company nor Ellis E. Sluss or appellee herein, John W. Sluss never in any manner consulted the wishes of the United States Fidelity & Guaranty Company on the question of the second ap-

peal, it is clear from the authorities herein cited that the Fidelity & Deposit Company was a volunteer and became liable to reimburse the United States Fidelity & Guaranty Company and when the Fidelity & Deposit Company reimbursed the United States Fidelity & Guaranty Company it did only what it could have been compelled to do. Therefore appellee is liable to appellant on his indemnity agreement herein sued upon, and that the trial court erred in overruling appellant's motion for a new trial.

Judgment reversed, with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.