**OUTHWAITE, Estate of, In re.**

Ohio Appeals, Second District, Franklin County.

No. 4379.   Decided March 9, 1950.

Paul M. Ashbaugh, Columbus, for the Massachusetts Bonding and Insurance Company, exceptor-appellant.

H. Paul Joseph, Columbus, for Anne S. Outhwaite, executrix-appellee.

## OPINION

By MILLER, PJ.

This is a law appeal from the judgment of the Probate Court overruling the exceptions filed by the Massachusetts Bonding and Insurance Company to the first and final account of Anne S. Outhwaite as Executrix of the Estate of Charles P. Outhwaite, deceased.

The bill of exceptions contains the following stipulated and agreed statement of facts which are pertinent to the questions here presented:

"It is stipulated by Anne S. Outhwaite, Executrix of the Estate of Charles P. Outhwaite, Deceased, and the Massachusetts Bonding and Insurance Company, Exceptor to the Final account of said executrix, that in the hearing upon said exceptions the record may show the following agreed statement of facts:

Charles P. Outhwaite died testate on May 9, 1944, leaving Anne S. Outhwaite, his widow, as his only legatee and devisee. On May 17, 1944, Anne S. Outhwaite, the widow, was appointed the Executrix of the Estate of Charles P. Outhwaite. Anne S. Outhwaite received Proof of Claim, dated May 18, 1944, from The Ohio National Bank of Columbus on a note in the principal sum of Thirteen thousand five hundred dollars ($13,500.00), signed by Charles P. Outhwaite. Copy of the note was presented with the claim showing the due date to be June 8, 1944. Said claim was allowed on May 19, 1944. Among the collateral on this note was a total of Six hundred forty (640) shares of Common Stock of the Buckeye Steel Castings Company, which stock had been inventoried in the Estate of Charles P. Outhwaite with no mention of the fact that the stock was pledged as collateral security on the note herein referred to. Before June 8, 1944, Anne S. Outhwaite consulted Singleton P. Outhwaite, who was her attorney and counsel at the time, and he advised her to take up said note on the due date out of her own funds so that interest would be stopped, there not being enough cash in the estate at the time to pay said note, and assured her that she could be reimbursed. Anne S. Outhwaite drew her own personal check in the amount of Thirteen thousand five hundred dollars ($13,500.00), payable to The Ohio National Bank. This check was presented to The Ohio National Bank and the note and securities referred to were delivered to Anne S. Outhwaite. Anne S. Outhwaite at this time was not aware that the estate was insolvent. Anne S. Outhwaite eventually sold the stock and realized from the sale of said stock, as well as the dividends, the sum of Twelve thousand three hundred forty-nine dollars eighty-six cents ($12,349.86), and obtained from the estate the sum of One thousand one hundred fifty dollars fourteen cents ($1,150.14), making a total of Thirteen thousand five hundred dollars ($13,500.00)."

The trial court found that the executrix, Anne S. Outhwaite, paid the note held by the Ohio National Bank on its due date out of her personal funds and that she later reimbursed herself in the amount of $13,500.00; that the security held by the bank on said note was 640 shares of the common stock.

of the Buckeye Steel Castings Company which was in the name of Charles P. Outhwaite; that Anne S. Outhwaite was the widow of the deceased and devisee under the will, and therefore had a direct interest in said securities; that she was either a legal or equitable assignee of the note and collateral securing the same and that she should be reimbursed in the sum of $12,349.86, which was the amount realized from the sale of the securities and that she restore to the estate the sum of $1150.14 which was the excess over the sale price of the securities which she had received from the estate.

The appellant is contending that the Court erred in finding that Anne S. Outhwaite became either a legal or equitable assignee upon her paying the note at the Ohio National Bank. The appellant admits that prior to the enactment of §10506-49 GC a widow who was administratrix of her husband's estate could pay indebtedness of the estate out of her individual funds and be subrogated to all the rights of the creditors. **11 O. L. R., 373.** But it is urged that **§10506-49 GC** prohibits such an advancement unless it "has been expressly authorized by the instrument creating the trust or when the Probate Court shall so approve." This requirement was met when the Probate Court approved the final account. At that time it had all of the facts before it and was cognizant of the entire transaction. Had fraud intervened or the action been detrimental to the best interests of the estate it would not have been so approved. **Sec. 10506-39 GC** is in point with regard to the hearing on the account which provides in part:

"At the hearing upon the account, the Court shall consider and determine all matters relating to such account and the manner in which the fiduciary has executed his trust, including the investment of trust funds, and may order the account approved and settled or make such order as the court may deem proper."

A somewhat parallel situation is found in the case of **McIntire v. McIntire, 65 Oh Ap 143.** At page 147 Phillips, J., says:

"In the instant case the approval of the Court was not obtained prior to the deposit but the court did approve the action of the guardian in that respect by approving his final account."

We are of the opinion that since Anne S. Outhwaite was subrogated to all of the rights of the bank she was entitled to reimburse herself to the extent of $12,349.86 as approved by the Probate Court.

We have examined the well considered opinion of Judge McClelland and are in full accord with the principles of law therein announced. We find no error in the record and the judgment is ordered affirmed.

HORNBECK and WISEMAN, JJ, concur.